IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


CHESTER C. NICHOLS,

        Plaintiff,

vs.                              Case No. 12-2243-SAC

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,[1]

        Defendant.


MEMORANDUM AND ORDER

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff supplemental security income payments. The matter has been fully briefed by the parties.

**I. General legal standards**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. <u>Glenn v. Shalala</u>, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a

---

[1] Carolyn W. Colvin became Acting Commissioner of Social Security on February 14, 2013, replacing Michael J. Astrue, the former Commissioner of Social Security.

scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the conclusion. The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion. Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989). Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted. Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992). The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met. Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA). The claimant's physical or

mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability. If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further. At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity." At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled. If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled. If

the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

**II. History of case**

On July 14, 2010, administrative law judge (ALJ) Patricia E. Hartman issued her decision (R. at 21-31). Plaintiff alleges that he has been disabled since July 1, 2007 (R. at 21). At step one, the ALJ found that plaintiff has not engaged in

substantial gainful activity since plaintiff's application date of April 16, 2008 (R. at 23). At step two, the ALJ found that plaintiff has the following severe impairments: degenerative disc disease of the lumbar spine; alcohol abuse; depression; anxiety; and bi-polar disorder (R. at 23). At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 23). After determining plaintiff's RFC (R. at 25), the ALJ determined at step four that plaintiff is unable to perform any past relevant work (R. at 29). At step five, the ALJ determined that plaintiff could perform other jobs that exist in significant numbers in the national economy (R. at 30). Therefore, the ALJ concluded that plaintiff was not disabled (R. at 31).

**III. Did the ALJ err in her evaluation of the medical opinion evidence?**

On July 25, 2008, Dr. Bergmann-Harms prepared a state agency mental RFC assessment, opining in section one that plaintiff had moderate impairments in: 1) the ability to maintain attention and concentration for extended periods, and 2) the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances (R. at 280). In section three, Dr. Bergmann-Harms opined as follows:

5

> 1. The clmt appears to have average
> intellect and can understand and remember
> simple and detailed tasks.
>
> 2. The clmt has the cognitive capacity to
> carry out simple and detailed tasks. His
> depression and some medication may interfere
> somewhat with sustained concentration and
> performing activities w/in a schedule.
>
> 3. The clmt can relate adequately on a
> superficial basis.
>
> 4. There are no significant concerns w/
> adaptation.
>
> 5. The clmt maintains the mental RFC for
> simple to detailed tasks with adequate
> attention span.

(R. at 282). The above opinions were affirmed by Dr. Warrender on October 10, 2008 (R. at 323). The ALJ gave "significant" weight to these opinions (R. at 29).

In her RFC findings, the ALJ included the following mental limitations:

> …can only perform simple, unskilled work,
> with a maximum SVP of 3; which requires only
> minimal interaction with co-workers, and
> brief, superficial contact with the general
> public; and is limited to low stress work
> which does not involve significant changes
> or adaptations.

(R. at 25).

Although the ALJ gave "significant" weight to these opinions, the ALJ, without explanation, did not include in her RFC findings the opinion of Dr. Bergmann-Harms and Dr. Warrender that plaintiff had moderate limitations in his ability to

6

maintain attention and concentration for extended periods, and in his ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances. Also, without explanation, the ALJ did not include in her RFC findings the opinion of Dr. Bergmann-Harms and Dr. Warrender that plaintiff's depression and some medication may interfere somewhat with sustained concentration and performing activities within a schedule. However, even though these medical sources found that plaintiff had no significant concerns with adaptation, the ALJ did include in her RFC findings that plaintiff be limited to work which did not involve significant changes or adaptations. The ALJ provided no explanation for not including all of the limitations set out in the medical source RFC assessment, while including a limitation not found in the same assessment.[2]

The ALJ did limit plaintiff to simple, unskilled work. However, even simple work can be ruled out by a vocational expert on the basis of a serious impairment in concentration and attention. Moderate impairments may also decrease a claimant's ability to perform simple work. <u>Bowers v. Astrue</u>, 271 Fed. Appx. 731, 733 (10th Cir. March 26, 2008); see <u>Brosnahan v. Barnhart</u>, 336 F.3d 671, 675 (8th Cir. 2003); <u>Newton v. Chater</u>, 92

---

[2] Although this issue was raised by plaintiff in his brief (Doc. 8 at 26-27), defendant's only response in her brief was to note that the ALJ gave "great" weight to these opinions (Doc. 13 at 13). Defendant did not address the ALJ's failure to include all of the limitations in the state agency mental RFC assessment in her RFC findings for the plaintiff.

7

F.3d 688, 695 (8th Cir. 1996)(two medical opinions indicated that that claimant had moderate limitations in his ability to maintain attention and concentration for extended periods; the vocational expert testified that a moderate deficiency in concentration and persistence would cause problems on an ongoing daily basis regardless of what the job required from a physical or skill standpoint; the court rejected the Commissioner's contention that deficiencies in attention and concentration, along with other mental limitations, did not have to be included in the hypothetical question because the question limited the claimant's capabilities to simple jobs).

Furthermore, in <u>Wiederholt v. Barnhart</u>, 121 Fed. Appx. 833, 839 (10th Cir. Feb. 8, 2005), the ALJ posed a hypothetical question that limited plaintiff to simple, unskilled work, and omitted from the hypothetical the ALJ's earlier and more specific findings that she had various mild and moderate restrictions.  The court held that the relatively broad, unspecified nature of the description "simple" and "unskilled" did not adequately incorporate additional, more specific findings regarding a claimant's mental impairments (including moderate difficulty in maintaining concentration, persistence, or pace), and therefore the hypothetical question was flawed. Because of the flawed hypothetical, the court found that the VE's opinion that the claimant could perform other work was

8

therefore not substantial evidence to support the ALJ's decision.

In addition, according to SSR 96-8p, the RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts...and nonmedical evidence." The ALJ must explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved. The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted. SSR 96-8p, 1996 WL 374184 at *7. SSR rulings are binding on an ALJ. 20 C.F.R. § 402.35(b)(1); Sullivan v. Zebley, 493 U.S. 521, 530 n.9, 110 S. Ct. 885, 891 n.9, 107 L. Ed.2d 967 (1990); Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993).

In the case of Martinez v. Astrue, 422 Fed. Appx. 719, 724-725 (10th Cir. Apr. 26, 2011), the court held that the ALJ erred by failing to include all of the limitations found by Dr. LaGrand without explaining why he rejected some of the limitations, especially in light of the ALJ's conclusion that the medical source's opinion was entitled to "great weight." The ALJ simply ignored certain limitations contained in the medical report. The court held that the ALJ may have had reasons for giving great weight to some of the limitations set

forth by the medical source, while rejecting other limitations. However, before rejecting some of the limitations, the ALJ was required to discuss why he did not include those limitations. An ALJ should explain why he rejected some limitations contained in a RFC assessment from a medical source while appearing to adopt other limitations contained in the assessment. Haga v. Astrue, 482 F.3d 1205, 1208 (10th Cir. 2007).

As in Haga, in the case before the court there is no explanation for why the ALJ adopted some of the limitations contained in the mental RFC assessment, but not others. The ALJ clearly erred by giving "significant" weight to the mental RFC assessment, but, without explanation, not including all of the limitations contained in the assessment in her RFC findings. On remand, the ALJ should either include all of the limitations in the assessment in the RFC findings, or, in the alternative, provide a legally sufficient explanation for not including these limitations in plaintiff's RFC findings.

The record also contains a physical RFC assessment from Dr. David Johnson, a treating physician, which is dated August 7, 2009 (R. at 325-329). Dr. Johnson opined that plaintiff had numerous limitations, including an ability to sit for less than 2 hours a day, and stand/walk for less than 2 hours a day; he further opined that plaintiff needs to shift positions at will from sitting, standing or walking (R. at 325-329). The ALJ

stated that this opinion is inconsistent with the record as a whole, is not supported by reasoned analysis explaining the basis for the limitations, and is a conclusory opinion that appears to give the maximum benefit of the doubt to the plaintiff's subjective complaints. For these reasons, the ALJ accorded "little" weight to this opinion (R. at 29).

In the case of Langley v. Barnhart, 373 F.3d 1116, 1121 (10th Cir. 2004), the court held:

> The ALJ also improperly rejected Dr. Hjortsvang's opinion based upon his own speculative conclusion that the report was based only on claimant's subjective complaints and was "an act of courtesy to a patient." Id. The ALJ had no legal nor evidentiary basis for either of these findings. Nothing in Dr. Hjortsvang's reports indicates he relied only on claimant's subjective complaints or that his report was merely an act of courtesy. "In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and *not due to his or her own credibility judgments, speculation or lay opinion*." McGoffin v. Barnhart, 288 F.3d 1248, 1252 (10th Cir.2002) (quotation omitted; emphasis in original). And this court "held years ago that an ALJ's assertion that a family doctor naturally advocates his patient's cause is not a good reason to reject his opinion as a treating physician." Id. at 1253.

Subsequently, in the case of Victory v. Barnhart, 121 Fed. Appx. 819 (10th Cir. Feb. 4, 2005), the court held:

> The ALJ's finding that Dr. Covington's
> opinion was based on claimant's own
> subjective report of her symptoms
> impermissibly rests on his speculative,
> unsupported assumption. See Langley, 373
> F.3d at 1121 (holding that ALJ may not
> reject a treating physician's opinion based
> on speculation). We find no support in the
> record for the ALJ's conclusion. Nothing in
> Dr. Covington's report indicates that he
> based his opinion on claimant's subjective
> complaints, and the ALJ's finding ignores
> all of Dr. Covington's examinations, medical
> tests, and reports. Indeed, the ALJ's
> discussion of Dr. Covington omits entirely
> his March 22, 2001 examination and report.
> His April 3, 2001 statement might well have
> been based on his recent first-hand
> examination and observation of claimant
> during this examination, performed less than
> two weeks earlier, rather than on claimant's
> subjective complaints, as the ALJ
> speculated. See Morales v. Apfel, 225 F.3d
> 310, 317 (3d Cir.2000) (noting that the
> treating physician's opinion may "reflect
> expert judgment based on a continuing
> observation of the patient's condition over
> a prolonged period of time").

121 Fed. Appx. at 823-824.

As Langley makes clear, the ALJ must have a legal or evidentiary basis for asserting that a medical source report was based on plaintiff's subjective complaints. However, the ALJ did not cite to either a legal or evidentiary basis for his assertion that Dr. Johnson's opinions were based on plaintiff's subjective complaints. In fact, Dr. Johnson's medical records include detailed MRI lumbar spine findings dated August 15, 2008, including mild and moderate degenerative changes (R. at

12

317-318). Dr. Johnson stated that the positive objective findings that supported his opinions included reduced range of motion in the lumbar spine, impaired sleep, tenderness, muscle spasm, and muscle weakness (R. at 325).[3] Dr. Johnson also stated that plaintiff's impairments are reasonably consistent with the symptoms and functional limitations set out in his assessment (R. at 326). Furthermore, Dr. Johnson saw and examined plaintiff on August 7, 2009, the same date that Dr. Johnson prepared the physical RFC assessment (R. at 358, 325-329). As the court stated in <u>Victory</u>, Dr. Johnson's assessment might well have been based on his recent first-hand examination and observation of plaintiff during this examination, performed on the day of the assessment, rather than on plaintiff's subjective complaints, as the ALJ speculated. For this reason, the case shall be remanded in order for the ALJ to give further consideration to the opinions of Dr. Johnson.

**IV. Other issues raised by plaintiff**

Plaintiff has raised other issues. However, the court will not address these issues because they may be affected by the ALJ's resolution of the case on remand after the ALJ gives further consideration to medical source opinions, as set forth

---

[3] There is no medical opinion evidence in the record indicating that either the MRI findings of August 15, 2008 or the objective findings noted by Dr. Johnson in his assessment do not support Dr. Johnson's RFC opinions regarding plaintiff's limitations.

13

above.  See Robinson v. Barnhart, 366 F.3d 1078, 1085 (10th Cir. 2004).

IT IS THEREFORE ORDERED that the judgment of the Commissioner is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this memorandum and order.

Dated this 18th day of September 2013, Topeka, Kansas.


s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge

(